IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| KATHERINE LYNNE ZUPANCIC, | ) | |
| | ) | CASE NO. BK13-42031 |
| Debtor(s). | ) | A13-4066 |
| NEBRASKA DEPARTMENT OF | ) | |
| HEALTH & HUMAN SERVICES, | ) | |
| | ) | |
| Plaintiff, | ) | CHAPTER 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| KATHERINE LYNNE ZUPANCIC, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

This matter is before the court on the plaintiff's motion for summary judgment (Fil. No. 17) and resistance by the defendant (Fil. No. 23). Kirk E. Goettsch represents the debtor, and Vicki L. Adams represents the plaintiff. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is granted.

For ten years, the debtor operated a counseling business in Lincoln, Nebraska, working as a licensed mental health practitioner. She contracted with the Nebraska Department of Health and Human Services in 2002 through 2006 to provide mental health counseling under the Nebraska Medical Assistance Program ("NMAP"), which is also known as the Medicaid program. In 2010, the State of Nebraska filed a civil lawsuit against her in the District Court of Lancaster County, alleging that she filed claims for payment for which there was no supporting documentation.[1] Nebraska's False Medicaid Claims Act subjects providers to civil liability for knowingly submitting a false or fraudulent claim for payment. The State's complaint also alleged the debtor breached her contract with NMAP by failing to maintain records to disclose the extent of services provided to individuals under the program and by failing to provide the services for which she requested and received payment. In addition, the complaint alleged fraudulent misrepresentation by the debtor in

---

[1]The complaint was filed against the debtor individually and against her business entities, so documents from the state court case reference "defendants" in the plural. The debtor, however, is ultimately responsible for the debt, so any references to "the defendant" or "the defendants" are to Ms. Zupancic.

submitting claims for which services had not been rendered, and unjust enrichment because the debtor was paid for services she either had not provided or could not substantiate. The State requested an award of damages for each count, with double and treble damages under the False Medicaid Claims Act on Count I of the complaint.

The case was tried to a jury, which returned a verdict on September 14, 2012, in favor of the State on each of the three counts – False Medicaid Claims Act, breach of contract, and fraudulent representation – submitted to it. The disposition of Count IV, unjust enrichment, is unclear from the record before me. The jury awarded damages on Count I of $99,785.05. No damages were awarded on the remaining counts. The district court judge entered judgment on September 19, 2012, as follows:

> With respect to the False Medicaid Claims Act the jury found in favor of the Plaintiff and determined that the amount of claims submitted for which records were knowingly not maintained was $99,785.05. The Court accepted the jury's verdict. Subsequent to that the Plaintiff waived its right to costs and attorney's fees under Neb. Rev. Stat. §68-939(3).[2] Now, pursuant to Neb. Rev. Stat. §68-939(2)[3] judgment is entered for the Plaintiff and against the Defendant in the amount of $299,355.15. Each party is to pay its own costs.

Fil. No. 1, Attach. E (footnotes added). The verdict was not appealed.

On October 13, 2013, the debtor filed a voluntary Chapter 7 bankruptcy petition. She schedule the State's judgment as an unsecured debt and listed the State and the attorney general on the creditor matrix. The State filed this adversary proceeding on December 12, 2013, seeking to except the judgment debt from discharge under 11 U.S.C. § 523(a)(2)(A) as a debt arising from the

---

[2]That section provides:

68-939. Records; duties; acts prohibited; liability; costs and attorney's fees
. . .
(3) If the state is the prevailing party in an action under this section, the defendant, in addition to penalties and damages, shall pay the state's costs and attorney's fees for the civil action brought to recover penalties or damages under the act.

[3]That section provides:

68-939. Records; duties; acts prohibited; liability; costs and attorney's fees
. . .
(2) A person who knowingly fails to maintain records or who knowingly destroys records within six years from the date payment for a claim was received shall be subject to damages in the amount of three times the amount of the claim submitted for which records were knowingly not maintained or knowingly destroyed.

debtor's false pretenses, false representations, or actual fraud. The debtor received a discharge of her other debts on February 24, 2014.

The debtor filed a motion to dismiss this adversary complaint for failure to state a claim upon which relief could be granted. After hearing the parties' arguments on February 26, 2014, the court denied the motion, ruling that the complaint does state a valid cause of action and the debtor's arguments about the viability of that cause of action were better suited to a motion for summary judgment. The State then filed a motion for summary judgment on April 30, 2014. The debtor filed a brief in opposition and the matter is now ready to be decided.

The Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" 11 U.S.C. § 523(a)(2)(A). To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. *R & R Ready Mix v. Freier (In re Freier)*, 604 F.3d 583, 587 (8th Cir. 2010). To have the debt excepted from discharge, the creditor must prove that the debtors obtained money or property from the creditor concurrent with the debtors' misrepresentation. *Marcusen v. Glen (In re Glen)*, 639 F.3d 530, 533 (8th Cir. 2011).

The State asserts that the payments made to the debtor based on the false claims represent monies obtained by false pretense, false representation, or actual fraud, so the entire judgment amount should be excepted from discharge. The debtor resists that argument on four grounds: that the debtor did not engage in either fraudulent misrepresentation or false pretenses, that the treble damage award is dischargeable as a fine or punishment, and that the State's claim is barred by issue preclusion and collateral estoppel.

Because the claim for relief in this adversary proceeding is based on a judgment entered in civil litigation in the state court, the first issue to be addressed is the preclusive effect of the state court's judgment. A state court action to establish a debt is separate from a determination of the dischargeability of that debt in bankruptcy. *Tatge v. Tatge (In re Tatge)*, 212 B.R. 604, 609 (B.A.P. 8th Cir. 1997). The bankruptcy court has exclusive jurisdiction to determine whether debts for a debtor's fiduciary or non-fiduciary fraud, embezzlement, larceny, or willful and malicious injury are non-dischargeable. 11 U.S.C. § 523(c); *Zio Johnos, Inc. v. Ziadeh (In re Ziadeh)*, 276 B.R. 614, 619 (Bankr. N.D. Iowa 2002). Therefore, the court must review the state court judgment to see whether it establishes the elements of a prima facie case under § 523. *Hobson Mould Works, Inc. v. Madsen (In re Madsen)*, 195 F.3d 988, 989-90 (8th Cir. 1999).

When the parties have previously litigated an issue in a state court, the bankruptcy court will look to state law to determine the preclusive effect of that judgment. *Madsen*, 195 F.3d at 989-90;

*Jacobus v. Binns (In re Binns)*, 328 B.R. 126, 129 (B.A.P. 8th Cir. 2005). In determining whether collateral estoppel arises from a prior state court judgment, federal courts apply the substantive law of the forum state in whose courts the prior judgment was entered. *Osborne v. Stage (In re Stage)*, 321 B.R. 486, 492 (B.A.P. 8th Cir. 2005). In Nebraska, the doctrine of collateral estoppel, also known as issue preclusion, holds that an issue of ultimate fact that was determined by a valid and final judgment cannot be litigated again between the same parties or their privies in any future lawsuit. *Stevenson v. Wright*, 733 N.W.2d 559, 565-66 (Neb. 2007). Collateral estoppel is applicable where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a judgment on the merits which was final, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Id.* at 566. The party asserting preclusion bears the burden of proving each of the elements. *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 743 (8th Cir.1991). When making the determination that an issue was actually litigated and was necessary to the decision in the prior proceeding, the court should examine the entire record of the earlier case. *Id.*

Here, the state district court judge instructed the jurors on the necessary elements of the three theories of relief which had been tried: False Medicaid Claims, breach of contract, and fraudulent misrepresentation. The court also instructed the jurors on the proper calculation of damages for each theory.

Instruction Number 2 described each element of each theory of relief that had to be established before the jury could enter a verdict in the State's favor:

> I. First Theory of Relief – False Medicaid Claims Act
>
> Before the Plaintiff may recover against the Defendant on its theory of relief under the False Medicaid Claim Act for the failure to maintain records, the Plaintiff must prove, by the greater weight of the evidence, each and all of the following:
> 1. The Defendants received payments for services under Medicaid; and
> 2. The Defendants failed to maintain such records as are necessary to disclose fully the nature of all services for which payment was received; and
> 3. The Defendants did so knowingly; and
> 4. The amount of claims paid for which the records were knowingly not maintained.
> . . .
> II. Second Theory of Relief – Breach of Contract
>
> Before the Plaintiff may recover against the Defendant on its theory of relief for Breach of Contract, the Plaintiff must prove, by the greater weight of the evidence, each and all of the following:
> 1. That Defendant contracted with the State of Nebraska to provide services under the Nebraska Medical Assistance Plan, commonly known as Medicaid; and

    2. That among the terms and conditions of the contract were that the Defendants maintain the records necessary to fully disclose the extent of the services they provided; and

    3. That the Defendants breached the contract as alleged by the State; and

    4. The Defendants' breach was the proximate cause of some damage to the State; and

    5. The nature and extent of the damage.

. . .

### III. Third Theory of Relief – Fraudulent Misrepresentation

Before the Plaintiff may recover against the Defendant on its theory of relief for fraudulent misrepresentation, the Plaintiff must prove, by the greater weight of the evidence, each and all of the following:

    1. That the Defendants represented to the State that information contained in the claims submitted was true, accurate and complete.

    2. That this representation was false; and

    3. The Defendants made said representation knowing it was false; and

    4. The Defendants intended that the State rely on said representation; and

    5. The State relied on said the representation;

    6. The State's reliance was reasonable; and

    7. That said representation was the proximate cause of some damage; and

    8. The nature and extent of its damage.

Fil. No. 11, Att. B.

The court then instructed the jurors on how to calculate damages, if any, for each theory of relief decided in the State's favor. The instruction made clear that the State could recover only once on each claim for payment, even if the jury returned verdicts in the State's favor on more than one of the State's theories of relief:

### INSTRUCTION NUMBER 12

If you return a verdict for the Plaintiff, then you must decide how much money will fairly compensate the Plaintiff for the damage. This instruction is to help you in making that decision.

With respect to each claim for payment submitted by the Defendants for which the Plaintiff seeks damages, the Plaintiff may only recover once. That is true even if you find the Plaintiff has met its burden of proof under all three theories of relief with respect to a claim.

If you find the State has met its burden to prove that the Defendants violated the False Medicaid Claims Act by failing to maintain records, the measure of damages is the amount of the claims paid for which records were knowingly not maintained. This is the amount you use to complete Verdict Form No l.

>       If you find that State has met its burden to prove that the Defendants breached their contract, the measure of damages is that amount which would put the State in the same position it would have been in had the contract not been breached. You must exclude from you[r] calculation on this theory of relief those claims, if any, for which you have awarded damages under any other theory of relief. The remainder is the amount you use to complete Verdict Form No 2.
>       If you find that the State met its burden to prove that the Defendant made fraudulent misrepresentations, the measure of damages is that amount which would put the State in the same position it would have been in had the fraudulent misrepresentation not been made. You must exclude from you[r] calculation on this theory of relief those claims, if any, for which you have awarded damages under any other theory of relief. The remainder is the amount you use to complete Verdict Form No 3.

*Id.*

Jury Instruction Number 12 precluded duplicate damage awards. In other words, the verdict forms, read in light of the instruction, make it clear that the jury's calculation of damages on the breach of contract and fraudulent misrepresentation theories did not exceed the amount the jury had awarded on the False Medicaid Claims Act theory. Therefore, contrary to the debtor's argument that there was no finding of fraudulent misrepresentation because the jury did not award damages for that theory, the record indicates the jury in fact found that the State had proven each element of fraudulent misrepresentation and it rendered a verdict accordingly, but it did not find that the appropriate measure of damages exceeded the $99,785.05 previously awarded on the False Medicaid Claims Act count.

The elements of fraudulent misrepresentation under § 523(a)(2)(A) as set forth on page 3 of this order and under state law as set forth in Instruction Number 2 and quoted above are the same, with one exception. Fraudulent misrepresentation under state law requires reasonable reliance by the plaintiff on the false representation, while § 523(a)(2)(A) requires the reliance to be justifiable. "Justifiable reliance" is a lower standard than "reasonable reliance," entailing no duty to investigate. *Treadwell v. Glenstone Lodge, Inc. (In re Treadwell)*, 423 B.R. 309, 314 (B.A.P. 8th Cir. 2010) (citing *Field v. Mans*, 516 U.S. 59 (1995)). Accordingly, because the jury found that the State had proven all of the elements of fraudulent misrepresentation, including a higher standard of reliance, the state court verdict preclusively establishes the elements of § 523(a)(2)(A), and thus the nondischargeability of the debt, in this proceeding.

However, the State's claim is based on the judgment in the civil case, which by its terms was entered only on the False Medicaid Claims Act cause of action. The only way the State can be successful on establishing the non-dischargeability of that debt is if the identical issues necessary for a § 523(a)(2)(A) finding were established in the state court case. While the elements of that claim as stated in the jury instructions do not match word-for-word with the § 523(a)(2)(A) elements, the similarity is evident. As stated above at page 3, § 523(a)(2)(A) requires a representation made by the debtor that she knew was false when she made it, made for the intention and purpose of

deceiving the State, and on which the State relied to its detriment. The verdict for the State means the jury found that the debtor received $99,785.05 in payments from the State for services rendered, for which she knowingly failed to supply records to support her claims. In effect, the jury found that the debtor made a representation in the form of the submission of claims for payment pursuant to Medicaid, she knew she did not have records "necessary to disclose fully the nature of all services for which payment was received," yet she submitted the claims anyway for the purpose of deceiving the State and obtaining payment.

The only real question to be decided is whether the jury found that the debtor's actions were intentional. The False Medicaid Claims Act does not use the term "intent"; rather, it uses the term "knowingly," which means that a person, with respect to information, had actual knowledge of such information; acted in deliberate ignorance of the truth or falsity of such information; or acted in reckless disregard of the truth or falsity of such information. Instr. No. 6 (Fil. No. 11, Att. B). Under § 523(a)(2)(A), the intent element of § 523(a)(2)(A) simply requires "a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." *Merchants Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (quoting *Moodie-Yannotti v. Swan (In re Swan)*, 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993)). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. *Id.* (quoting *Federal Trade Comm'n v. Duggan (In re Duggan)*, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). The key is whether the debtor knew the statement to be false at the time she made it. "Even if a false statement is made, no fraud exists unless the maker knows the statement is false at the time the statement is made." *Lindau v. Nelson (In re Nelson)*, 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006).

The jury found that the debtor submitted her claims for payment despite knowing she had no supporting documentation for her claims. In other words, she made a false representation about the validity of her claims when she submitted them, she knew the claims were false because she knew she had no records to back them up, and she intended the State would rely on the false representation and pay her. This is sufficient to meet the elements of § 523(a)(2)(A).

The debtor's conduct here, based on the jury's findings, appears to be more than mere "unacceptable recordkeeping," which a Minnesota bankruptcy court ruled was an insufficient basis for an exception to discharge. *State of New York v. Khouri (In re Khouri)*, 397 B.R. 111, 119-20 (Bankr. D. Minn. 2008). The *Khouri* case involved an administrative decision by the New York Department of Social Services that the debtor had been overpaid more than $400,000 on claims to the Medicaid program that had no documentary support. The Minnesota bankruptcy court refused to let the creditor use the administrative decision as collateral estoppel in a non-dischargeability proceeding because the administrative decision and the elements of § 523(a)(2)(A) lacked an "identity of issues." The court found that the administrative decision hinged solely on the debtor's lack of detailed patient records, which the hearing officer labeled "unacceptable recordkeeping," and from that drew "multiple inferences of actual performance of excessive services, failure to perform services as stated, failure to meet recognized standards in care, and actual submission of '[f]alse claims.'" *Id.* at 119. The administrative finding that the debtor's "claims were 'false' for want of supporting documentation" was sufficient to satisfy the first element of § 523(a)(2)(A), and the

finding that the debtor's violation of Medicaid requirements for claims documentation had caused the agency a substantial monetary loss in the unnecessary expenditure of program funds satisfied the fifth element of the statute. *Id.* at 120. However, the court determined that the administrative decider did not make any findings as to contemporaneous knowledge of falsity, intent to deceive, and actual and justifiable reliance, so the court ruled that collateral estoppel did not apply and denied the creditor's motion for summary judgment.

The debtor in this case also argues that the court's trebling of damages under the False Medicaid Claims Act is dischargeable because it is not intended to compensate the State for injury but instead is intended to be punitive. Regardless of whether this portion of the judgment is compensatory or punitive, it is not dischargeable. First, the False Medicaid Claims Act provides that a violator is subject to the imposition of a civil penalty, and "[i]n addition to any civil penalty, any such person may be subject to damages in the amount of three times the amount of the false claim because of the act of that person." Neb. Rev. Stat. § 68-936(2). That language would indicate treble damages are compensatory. Even if they are not compensatory, debts for fines, penalties, and forfeitures payable to and for the benefit of a governmental unit are excepted from discharge under 11 U.S.C. § 523(a)(7); *United States v. Horras (In re Horras)*, 443 B.R. 159, (B.A.P. 8th Cir. 2011).

The State and the debtor both raise for the court's consideration the case of *Nebraska Dep't of Health & Human Servs. Fin. & Support v. Palermo (In re Palermo)*, Adv. No. A07-8036-TJM, 2010 WL 1428291 (Bankr. D. Neb. Feb. 5, 2010). Ms. Palermo was also a state-licensed mental health therapist who provided therapy services to Nebraska Medicaid patients and billed the Nebraska Medicaid program for the services. She submitted billings and was paid for services she either did not provide or was not authorized to provide. The State investigated, and she was charged with the crime of Medicaid fraud, to which she pleaded guilty. Her sentence included an order to pay restitution. She filed a Chapter 7 bankruptcy case and the State filed a non-dischargeability action. After a trial on the matter, the court found that she knowingly and intentionally submitted false claims for payment and the debt should be excepted from discharge. The court calculated damages, including double and treble damages under the statute, and awarded that amount plus fees and costs. The court specifically denied the debtor's duplication argument, finding that the statutory civil penalties and damages were separate and distinct from the criminal penalties that were imposed. Because of the dissimilarities between the criminal sentence in that case and the civil judgment in this case, and the factual bases for each, it provides little guidance in this matter.

To sum up, the judgment obtained by the State in the civil litigation against the debtor meets the requirements of non-dischargeability under § 523(a)(2)(A) for money obtained through false pretenses, a false representation, or fraud. Summary judgment is appropriate if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). It is not a disfavored procedural shortcut, but rather is an integral part of the federal procedural rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. at 327 (quoting Fed.

R. Civ. P. 1); Fed. R. Bankr. P. 1001. Here, the State is entitled to summary judgment for the full amount of the state court judgment.

IT IS ORDERED: The plaintiff's motion for summary judgment (Fil. No. 17) is granted. Separate judgment will be entered.

DATED:  June 12, 2014.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    Kirk E. Goettsch
    *Vicki L. Adams
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.